**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| FELIX CHEESEBORO, #237564, Petitioner, | CIVIL ACTION NO. 0:07-4090-PMD-PJG |
| v. | **REPORT AND RECOMMENDATION** |
| LEROY CARTLEDGE, Acting Warden of McCormick Correctional Institution, Respondent. | |

This is a pro se Petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on December 17, 2007.[1] The Respondent filed a return and motion for summary judgment on June 2, 2008. As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court on June 3, 2008, advising Petitioner of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Petitioner was specifically advised that if he failed to respond adequately, the Respondent's motion may be granted, thereby ending his case. After receiving extensions of time to respond, Petitioner filed a memorandum in opposition on September 2, 2008. This matter is now before the Court for disposition.[2]

## Procedural History

Petitioner was indicted in January 1997 for two charges of murder [Indictment Nos.

---

[1]Filing date under Houston v. Lack, 487 U.S. 266 (1988).

[2]This case has been reviewed by the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

97-GS-40-17742 & 97-GS-40-17743], three charges of armed robbery [Indictment Nos. 97-GS-40-17744, 97-GS-40-17745, & 97-GS-40-17746], three charges of kidnapping [Indictment Nos. 97-GS-40-17747, 97-GS-40-17748, & 97-GS-40-17749], and one charge of assault and battery with intent to kill ("ABIK") [Indictment No. 97-GS-40-17750]. (Volume 7, pp. 3460-3497). The State also gave Notice of Intent to Seek the Death Penalty**.**

Petitioner was represented on these charges by Chief Public Defender Jeffery P. Bloom, Assistant Public Defender L. Ross Hall, William N. Nettles, Esquire, and Tony L. Axam, Esquire. After a trial by jury on April 27, 1998-May 14, 1998, Petitioner was found guilty on all nine charges. (Volume 6, pp. 2645-2646[3]). Petitioner exercised his right to the 24-hour cooling-off-period in S.C. Code § 16-3-20(B), and the sentencing phase of his trial did not begin until the following day. (Volume 6, pp. 2647-2648). On May 17, 1998, the jury returned without being able to render an unanimous verdict as to sentence; however, it did find the existence of a number of statutory aggravating factors. Accordingly, the trial judge sentenced Petitioner to a term of twenty (20) years for ABIK (Volume 7, p. 3493[4]), a term of thirty (30) years, consecutive, on each of the three armed robbery indictments (Volume 7, pp. 3470, 3474, 3478), a term of thirty year (30) years, consecutive, for the kidnaping of surviving victim Kendrick Davis (Volume 7, p. 3486), and a term of life imprisonment without parole, consecutive, on each of the two murders (Volume 7, p. 3462, 3466). Pursuant to § 16-3-910, S.C. Code of Laws, the trial judge did not sentence Petitioner for the kidnappings of murdered victims Leon Poole and Frank Kelly (Volume 7, pp. 3482, 3490).

---

[3]Volume 6, p. 2644-2645, appears to skip and not include numbered pages 5465-5471 of the original transcript.

[4]The pages listed after page 3459 in Volume 7 do not have page numbers at the top. Therefore, it is necessary to manually count to arrive at the correct page numbers cited after page 3459.

A timely appeal was filed on behalf of the Petitioner, raising the following direct appeal issues:

1. The lower court erred in denying appellant's motion to dismiss the state's indictments, or in the alternate, to suppress evidence and testimony pertaining to the alleged murder weapon because the premature destruction of the weapon hindered appellant's defense, which in turn rendered the trial against him fundamentally unfair.

2. The lower court erred in allowing into evidence the in-court and out-of -court identifications made by Kendrck Davis and his identification testimony thereof because said evidence was tainted and unreliable due to an unduly suggestive and invalid hypnosis procedure.

3. The lower court erred in allowing prejudicial Lyle testimony regarding a cabdriver murder into evidence at trial.

4. The lower court erred in denying the defense an opportunity to examine Kendrick Davis about his use of a specific racial slur in order to fully attack his credibility as a witness and the credibility of his identification of appellant as the perpetrator in the case.

5. The lower court erred in denying the defense an opportunity to impeach Kendrick Davis with his entire prior criminal record.

6. The lower court erred in denying the defense's motion for a mistrial after Sergeant Mitch Wilkerson commented twice on appellant's post-arrest silence.

7. The lower court erred in not requiring the state to identify the confidential informant who led police to state's witness Bernard Johnson and to release tapes of Johnson's drug transactions, all of which constituted critical impeachment evidence in the case.

8. The lower court erred in denying the defense impeachment information connected to Bernard Johnson, particularly in light of the fact that he received an eight year sentence after pleading guilty to all his drug charges subsequent to appellant's trial.

9. The lower court erred in allowing letters appellant allegedly wrote to inmate Virgil Howard into evidence at trial because the letters were irrelevant and prejudicial.

10. The lower court erred in not allowing the defense to put forth evidence regarding its response to the S-A-F-E letter written by appellant.

11. The lower court erred in allowing into evidence testimony establishing that appellant was in possession of a .45 Caliber pistol subsequent to the barbershop incident and

prior to his Greenville arrest.

12. The lower court erred in failing to grant appellant's motion for a mistrial after the admission of Lyle testimony into evidence suggesting that appellant stole the .45 caliber pistol in question

13. The lower court erred in allowing the Ruckus letter into evidence at trial.

14. The lower court erred in denying the state an opportunity to submit evidence in direct opposition to the Ruckus letter.

15. The lower court erred in denying the defense an opportunity to cross-examine Sergeant Wilkerson regarding other suspects who confessed ot the Kelly killings.

16. The lower court erred in denying appellant's request circumstantial evidence charge.

17. The lower court erred in denying appellant's request for Manning reasonable doubt charge.

(Volume 6, pp. 2913-2914)

Petitioner was represented on appeal by Wanda H. Haile of the South Carolina Office of Appellate Defense. Following oral argument on June 20, 2001, the South Carolina Supreme Court issued a written order affirming Petitioner's convictions and sentences on August 27, 2001. See State v. Cheeseboro, 552 S.E.2d 300 (2001). (Volume 7, pp. 3179-3202). Petitioner, through counsel, filed a Petition for Rehearing on September 11, 2001; (Volume 7, pp. 3203-3211); which was denied by the South Carolina Supreme Court on September 27, 2001. (Volume 7, p. 3212). The Remittitur was sent down on December 21, 2001. See Remittitur dated December 21, 2001. (Volume 7, p. 3272).

Petitioner's counsel then filed a Petition for Writ of Certiorari with the United States Supreme Court, in which he raised the following issues:

> 1) Did the South Carolina Supreme Court err in holding that the gun-related testimony and evidence constituted admissible evidence when said weapon was destroyed before petitioner could conduct independent tests on the weapon, and when police negligence in the handling [of] the weapon rose to the level of bad faith?



R Wst

> 2) Did the South Carolina Supreme Court err in holding that the eyewitness' hypnosis identification and the identification testimony and evidence that emanated as a result constituted admissible evidence?
>
> 3) Did the South Carolina Supreme Court err in holding that the trial judge's limitation of petitioner's cross-examination of the eyewitness regarding his use of a specific racial slur did not violate the sixth amendment?

(Volume 7, p. 3214).

The United States Supreme Court denied the Petition on March 18, 2002. (Volume 8, Exhibit 5).

Petitioner then filed an Application for Post-Conviction Relief ("APCR") in state circuit court on June 29, 2002; Cheeseboro v. State of South Carolina, 02-CP-40-3652 (Volume 7, pp. 3273-3299); in which he raised the following issues:

> 1) Lack of Subject Matter Jurisdiction;
>
> 2) Ineffective Assistance of Counsel;
>
> 3) Ineffective Assistance of Appellate Counsel;
>
> 4) Violation of Procedural Due Process.

(Volume 7, pp. 3277-3279).

An evidentiary hearing was held on October 24, 2005, at which Petitioner was present and represented by Charlie J. Johnson, Jr., Esquire. (Volume 7, pp. 3306-3452). On January 12, 2006, the PCR judge entered a written order denying the petition in its entirety. (Volume 7, pp. 3453-3459).

Petitioner filed a petition for writ of certiorari in the South Carolina Supreme Court, and was represented by Wanda H. Carter of the South Carolina Office Of Appellate Defense. Petitioner's counsel filed a Johnson[5] brief requesting to be relieved as counsel and raising the

[5] Johnson v. State, 364 S.E.2d 201 (S.C. 1998); see also Anders v. California,386 U.S. 738, 744 (1967).

following issue:

> Trial counsel erred in advising Petitioner not to testify during the guilt phase of his trial.

(Volume 8, Exhibit 7, pp. 2, 7).

Petitioner also filed a pro se brief. On December 5, 2007, the South Carolina Supreme Court denied the petition. (Volume 8, Exhibit 9). The Remittitur was issued on December 21, 2007. (Volume 8, Exhibit 10).

In his Petition for writ of habeas corpus filed in the United States District Court, Petitioner raises the following claims:

> **Ground One**: Trial Counsel was ineffective for not presenting evidence of the August 23, 1996 police search of Apartment 4 on House Street, to prove that Petitioner never had possession of the alleged murder weapon in his capital case.
>
> **Ground Two:** Trial Counselor was ineffective for not filing any additional motion to the Courts, to examine the alleged murder weapon.
>
> **Ground Three:** Trial Counselor was ineffective for advising Petitioner not to testify during the guilt phase of his trial, and for not presenting the jury with an alternative interpretation of the State's evidence that would give the jury reason to doubt the State's case.
>
> **Ground Four:** Trial Counselor was ineffective by not investigating the cab drivers murder, "with the intent" to put up a meaningful adversarial challenge and alternative interpretation against the State's evidence and theory.
>
> **Ground Five**: Solicitor committed prosecutors misconduct by not only telling the Court that their witness never received any promises of a deal, but also telling their witnesses to say the same thing on the stand.

See Petition; see also Amended Petition.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

With respect to his ineffective assistance of counsel claims, Petitioner alleges his trial counsel was ineffective for: 1) not presenting evidence of the August 23, 1996 search of Apartment #4 on 1028 House Street to prove that Petitioner never had the alleged murder weapon in his possession; 2) not filing any additional motions to examine the alleged murder weapon; 3) advising Petitioner not to testify during the guilt phase of his trial, and not presenting the jury with an alternative interpretation of the State's evidence that would give the jury reason to doubt the State's case; and 4) not investigating the cab driver murder "with the intent" to put up a meaningful adversarial challenge and alternative interpretation against the State's evidence and theory. Respondent does not contest that these issues all appear to have been raised in Petitioner's APCR[6], where Petitioner had the burden of proving the allegations in his petition. Butler v. State, 334 S.E.2d

---

[6]With respect to Ground One, however, Respondent contends that, to the extent this claim may have been raised in the APCR, Petitioner abandoned it at the PCR hearing.

813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986).

The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Cheeseboro v. State of South Carolina, No. 02-CP-40-3652. Specifically, the PCR judge found that: 1) Petitioner testified that trial counsel failed or refused to provide him with all the discovery in his case; 2) Petitioner testified that he wanted the opportunity to explain to the jury about why he wrote the letters that the prosecution said implicated the Petitioner and explain his prior record; 3) Petitioner testified that he told his attorneys that the letter that allegedly referred to a robbery involving a safe was actually another robbery he had committed, it was not the robbery that resulted in these charges he was on trial for and he wanted to explain that to the jury; 4) Petitioner further testified that his counsel told him that would be a bad idea; 5) trial counsel Bloom testified that he filed a Rule 5/ Brady Motion in Petitioner's case; 6) Bloom testified that discovery in this case was so voluminous that it was stored in approximately a dozen large banker's boxes; 7) Bloom testified that this was a case in which the death penalty was being sought, and Nettles and Ross were appointed as co-counsel; 8) Bloom testified that Petitioner later retained Axam to join the defense team; 9) Bloom testified that he had many discussions with the Petitioner about his case; 10) Bloom testified that they went over discovery material, and that they discussed the pros and cons of his right to testify on his own behalf; 11) Bloom testified that he discussed with the Petitioner what he and co-counsel perceived as the strong disadvantages to the Petitioner taking the stand in this case, but that the ultimate decision as to whether the Petitioner would testify or not was the Petitioner's; 12) Bloom testified that Petitioner in this case appeared to easily understand their discussions, that he never hesitated to make his opinions and ideas known, and was very pro-active in his involvement in his defense; 13) Bloom further

testified that this case had some unique circumstances, specifically that the alleged weapon used in this case was purportedly found at the house of another individual, which prevented Petitioner's attorneys from lodging a valid challenge to the search warrant due to the Petitioner's lack of standing to make such a challenge; 14) Bloom testified it was later discovered by the defense team that the actual firearm that had been seized by police, and the prosecution was alleging that petitioner used in the perpetration of the crimes, was accidentally destroyed by the police prior to trial; 15) Bloom testified that they had a general discovery motion that requested all discovery materials in this case possessed by the State, which would have included the gun; 16) Bloom testified that there was no need for any additional motions for discovery specifically requesting the gun because there was no way for them to know that the police were going to accidentally destroy it; 17) Bloom testified that the defense retained several experts, including a crime scene expert, Girndt, who was present for all of the testimony at trial, including that of their other experts such as the gun expert, but decided not to put him on the stand since they had gotten everything they needed from the other witnesses; 18) Bloom further testified that, concerning the testimony of Bernard Johnson and Kendrick Davis, the defense team was in possession of all written statements made prior to trial by any witnesses; 19) Bloom testified that neither Johnson's or Davis' testimony was hearsay or anything that would give rise to a valid evidentiary objection; 20) Bloom testified that the defense was able to impeach these witnesses on cross-examination as much as possible; 21) Nettles testified that he gave the opening and closing arguments and that he focused on the forensic evidence; 22) Nettles opined that one of the strongest points presented by the defense in Petitioner's favor was the portrayal of law enforcement's sloppy work on the investigation, the clearest evidence of this being the accidental destruction of the gun alleged to have been involved in these crimes; 23) Nettles testified that he believed that the

destruction of the gun was probably one of the best things to happen in Petitioner's case; 24) Nettles testified that he still believes the advice to the Petitioner not to take the stand was good advice and that had Petitioner taken the stand, he may have received the death penalty instead of a life sentence; 25) Nettles further testified that, overall, he believed the defense, especially Bloom, made a superhuman effort and that effort was probably why Petitioner did not receive the death penalty; 26) trial counsel articulated that they exhaustively prepared for this case; 27) trial counsel investigated the case, interviewed potential witnesses, and hired experts; 28) Petitioner failed to show any prejudice arising from the alleged failures of counsel; 29) Petitioner did not show that counsel was deficient in their choice of tactics; 30) defense counsel was not ineffective for making valid trial strategy decisions; 31) Petitioner did not carry his burden to show a reasonable probability that the result at trial would have been different had trial counsel done what Petitioner alleges they should or should not have done; and 32) the allegation of ineffective assistance of counsel was without merit. (Volume 7, pp. 3454-3458).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the

objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996). For the reasons set forth below, the undersigned finds that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

**Ground One.** Petitioner alleges his trial counsel was ineffective for not presenting evidence of the August 23, 1996 search of Apartment #4 on 1028 House Street to prove that Petitioner never had the alleged murder weapon in his possession. Although Respondent does not contest that this claim was listed in the PCR petition, Respondent contends that it was not properly pursued and exhausted at the hearing. Petitioner disputes this contention, and argues that he did pursue this claim at his PCR hearing; however, the record is clear that the PCR judge did not address this issue in his order. See (Volume 7, pp. 3453-3459).

Petitioner argues in his Petition that State's witness Bernard Johnson testified that Petitioner gave him the gun in May or June 1996, and that Johnson then gave the weapon to Lamont Hilliard, who kept it under his mattress at 1028 House Street, where it was found by the police following a search in October 1996. Petitioner asserts that the house was also searched by the police in August 1996 and no gun was found, and that since Petitioner was in jail from June 1996 (on unrelated charges) until his arrest on the charges in this case, the gun he gave to Johnson was a different gun and counsel should have presented this argument. However, the issue addressed by the

PCR judge concerning the search of 1028 House Street involved whether or not Petitioner could challenge the search of 1028 House Street when the gun was found in October 1996. (R.p. 3454, Issue 1). It did not relate to or discuss the earlier search of the property.

Bloom testified at the PCR hearing that the gun was found as a result of an arrest at that residence of another individual, and that he explained to the Petitioner that he had no Fourth Amendment standing to contest the seizure of the gun from a residence where he did not live. (Volume 7, pp. 3354-3355). The PCR judge discussed Petitioner's testimony that his counsel was ineffective for failing to properly investigate the circumstances surrounding the search warrant that led to the discovery of the firearm alleged to have been used by the Petitioner, and then discussed Bloom's testimony regarding the search warrant and Petitioner not having standing to challenge the search warrant. (Volume 7, pp. 3454, 3456). The PCR judge did not discuss the issue Petitioner now presents in Ground One of his Petition. Further, after obtaining the PCR Court's order, the Petitioner did not file any motions seeking to obtain a ruling on this or any other issue, even though such a motion was necessary to preserve this claim, since a "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order." Al-Shabazz v. State, 527 S.E.2d 742, 747 (S.C. 2000)(citing Pruitt v. State, 423 S.E.2d 127, 128 n. 2 (S.C. 1992)[issue must be raised and ruled on by the PCR judge in order to be preserved for review]; Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007)["Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review . . . ."]; Humbert v. State, 548 S.E.2d 862, 865 (S.C. 2001); Plyler v. State, 424 S.E.2d 477, 478-480 (S.C. 1992)[issue must be both raised to and ruled

upon by PCR judge to be preserved for appellate review][7]; see Rule 59(e), SCRCP [providing avenue for any party to move to alter or amend a judgment if they believe necessary matters not addressed in original order]; Primus v. Padula, 555 F.Supp.2d 596, 611 (D.S.C. 2008); Smith v. Warden of Broad River Correctional Inst., No. 07-327, 2008 WL 906697 at * 1 n. 1 (D.S.C. Mar. 31, 2008); McCullough v. Bazzle, No. 06-1299, 2007 WL 949600 at * 3 (D.S.C. Mar. 27, 2007)(citing Al-Shabazz, 577 S.E.2d at 747).

Therefore, since Petitioner did not properly preserve this claim in his PCR proceeding, it is barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there is no current state remedy for Petitioner to pursue this issue, it is fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived

[7]While a copy of Petitioner's pro se appellate brief has not been provided to the Court, based on the cited case law, this issue could not have been considered on appeal even if it was raised in Petitioner's pro se brief.

by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though technically exhausted, since this issue was not properly pursued by the Petitioner in the state court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence. Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Since Petitioner contends that he did pursue this claim in his APCR, he does not argue any "cause" for a default of this claim. Petitioner does later complain about his PCR counsel in his memorandum in opposition to summary judgment, but to the extent Petitioner may be attempting to argue that his PCR counsel was ineffective for failing to properly pursue this claim in his PCR action, this argument does not provide Petitioner relief. The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)("[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"); Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc). However, while ineffective

assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation. Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996). Here, Petitioner has failed to show the necessary "cause" for his procedural default because, to the extent that Petitioner is claiming that his PCR counsel did not pursue this claim, ineffective assistance of PCR counsel does not amount to an independent constitutional violation and is not therefore "cause" for a procedural default. Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

Accordingly, Petitioner has failed to show cause for his procedural default on this issue. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]. Nor does the undersigned find that Petitioner has met his burden of showing actual innocence, or that a fundamental miscarriage of justice will occur if this issue is not considered. see, Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159

[a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496)); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995)). To prevail under an "actual innocence" theory, Petitioner must produce new evidence that was not available at trial to show his factual innocence. Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999). Further, Petitioner must "demonstrate actual factual innocence of the offense or conviction; i.e., that petitioner did not commit the crime of which he was convicted." United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1999). He has failed to do so.

Therefore, this claim is procedurally barred from consideration by this Court, and must be dismissed. See 28 U.S.C. § 2254.

**Ground Two**. Petitioner also contends that his trial counsel was ineffective for failing to file any additional motions with the Court to examine the alleged murder weapon. Upon review of the record and materials in the file consistent with the applicable case law, I do not find that the Petitioner was denied effective assistance of counsel with respect to this claim.

Bloom testified that he had made routine discovery motions which would have provided access to the gun, and that it was his experience that once the State tests physical evidence, he is always given access to it. (Volume 7, pp. 3336-3337). Bloom also testified that "[t]he fact that the alleged firearm in the case got melted by the City Police Department and disposed [of] during the interim was something no one could foresee. We actually I think in my humble observation ended up using that to our advantage as a factual issue with the jury to allege reasonable doubt." (Volume 7, p. 3337). Bloom testified that they could not foresee this circumstance and were waiting until the State completed their testing of the weapon. (Volume 7, p. 3365). Bloom also testified that he had

been practicing for fifteen years and had never encountered a situation where evidence had been accidentally destroyed, so he did not feel that he needed to file a motion to protect the evidence. (Volume 7, p. 3409). Co-counsel Nettles testified that they used the destroyed gun to argue to the Petitioner's advantage about the sloppy police work and shoddy crime scene work, while Bloom testified that they were allowed to fully explore the issue of the gun being melted down on cross-examination and argue it to the jury. (Volume 7, pp. 3338, 3411). However, Johnson and others testified that Petitioner was in possession of the firearm during the relevant time period. (Volume 7, pp. 3338, 3346).

As previously discussed, since Petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in §2254(d)(1), as interpreted by the Supreme Court in Williams v. Taylor, supra. See Bell v. Jarvis, supra; see also Fisher, 215 F.3d at 446; Evans, 220 F.3d at 312. The state court found no indication of ineffective assistance in this evidence, and there is no basis in this record to overturn the findings of the State Court. Evans, 220 F.3d at 312. Petitioner has not shown that his counsel was ineffective for failing to file additional motions to examine the gun earlier.

Further, Petitioner has also failed to show that the outcome of his trial would have been different if his counsel had filed additional motions regarding the gun or had even examined the gun prior to its destruction. On direct appeal, Petitioner asserted that the murder weapon and any testimony regarding it should have been suppressed, or the indictments against him dismissed, because the gun was destroyed before the defense team could examine it. However, the State Supreme Court found no evidence of bad faith, that the police officers followed normal procedures

in destroying the gun, that there was no indication on the gun connecting it to the barbershop murders at the time of its destruction, and that while there was evidence of a lack of care, there was no evidence of an intentional destruction of relevant evidence. (R.p. 3185). In addition, the Court found that Petitioner had not demonstrated that the gun had exculpatory value that was apparent before it was destroyed. The Court specifically found,

> Further, [Petitioner] has not demonstrated in the alternative that the gun had exculpatory value that was apparent before it was destroyed. [Petitioner's] expert testified the actual gun rather than the photographs of it should have been presented to the witnesses for identification. None of the witnesses, however, including [Petitioner] at the time he gave his statement, expressed any doubt that the gun in the photographs was the gun given to [Petitioner]. Further, Agent Paavel definitely identified the murder weapon as the gun in the photographs. There is no evidence of any apparent exculpatory value especially given the fact that the gun was recovered months after the crime and fingerprints were not an issue.
>
> Finally, all of Agent Paavel's reports and the documentation of his microscopic comparison of the bullets from the murder scene with the test bullets fired from the gun, in addition to the bullets themselves, were available to the defense. Accordingly, comparable evidence was available from a source other than the gun.
>
> The trial judge properly denied [Petitioner's] motions on this ground.

(R. p. 3186).

The same direct appeal issue was also raised to the United States Supreme Court, on which certiorari was denied. Based upon a review of the facts and the state court proceedings, Petitioner has failed to show that the outcome of his trial would have been different if his counsel had made any additional motions to examine the gun. Petitioner's arguments to the contrary are mere speculation and conjecture.

Nor has Petitioner shown that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. Petitioner's claim that his counsel was ineffective on this ground is without merit, and should be dismissed. Fisher, 215 F.3d at 446-447 [Court reviewed petitioner's ineffective assistance of counsel claims under the standards set forth in 28 U.S.C. § 2254(d)].

**Ground Three**. Petitioner contends in Ground Three of his Petition that his trial counsel was ineffective for advising him not to testify during the guilt phase of his trial and not presenting the jury with an alternative interpretation of the State's evidence that would give the jury reason to doubt the State's case. However, while Petitioner testified at his PCR hearing that his trial counsel wrongly advised him to decline to testify at trial, he has not shown how counsel was ineffective for giving him this advice. Bloom testified that he met with Petitioner over fifteen times (which did not include times when other counsel met with Petitioner without Bloom), and that he thoroughly discussed with Petitioner the implications of him testifying. (Volume 7, p. 3343). Bloom also testified that he and other counsel advised Petitioner not to testify during the guilt phase, but that it was his decision whether to testify or not testify. (Volume 7, p. 3344). Bloom opined that Petitioner is very strong willed, had a very clear view of how he wanted his case to proceed and did so at trial, and that Petitioner was not coerced not to testify, nor was his will overborne. (Volume 7, p. 3344). Bloom testified that Petitioner is intelligent, was able to read the discovery, digest and understand materials, discuss matters with counsel and make sure that his point came across to counsel, and cogently and clearly expressed how he wanted certain aspects of his case to proceed. (Volume 7, p. 3345). Bloom testified that "I have no doubt that if he had clearly wanted to testify,

despite our advice, he could have and would have done so." (Volume 7, p. 3367). Bloom also testified that they felt Petitioner would have been subjected to a very vigorous cross-examination, including his prior criminal history. (Volume 7, p. 3386). Nettles opined that if Petitioner had testified that there was a good chance that he would have received the death penalty, and that advising Petitioner not to take the stand was probably the best advice they gave Petitioner throughout the entire trial. (Volume 7, p. 3413). However, Nettles also testified that whether or not to testify was ultimately Petitioner's decision. (Volume 7, p. 3414).

With respect to Petitioner's claim that an alternative interpretation of the State's evidence should have been presented, Bloom testified that there was a lot of discovery in Petitioner's case, taking up six to twelve banker's boxes. (Volume 7, p. 3333). Bloom testified that they had full access to all the physical evidence, such as the shoe impressions, as well as to any document or witness statement. (Volume 7, p. 3347). Bloom testified that they also shared all the discovery with the Petitioner, and that there was significant evidence against the Petitioner including an eyewitness identification, testimony that Petitioner had the gun during the relevant time period, and handwritten letters by the Petitioner written in code, but referencing both the barber shop murders and the cab driver murder. (Volume 7, pp. 3337-3340). Petitioner's argument that counsel could have done a better job with this evidence is pure speculation and conjecture.

Again, there is no basis in this record to overturn the findings of the State Court. Evans, 220 F.3d at 312. While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. Strickland, 466 U.S. at 689; Bunch v. Thompson, supra; Horne v. Peyton, 356 F.2d 631, 633 (4th Cir. 1966); Burger v. Kemp, 483 U.S. 766 (19878); see also

Harris, 874 F.2d at 762. Petitioner has not shown that his counsel was ineffective for advising him of possible vulnerable areas where he could be cross examined if he chose to testify, or that he was prejudiced by his failure to testify. Nor has Petitioner shown that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].

Petitioner's claim that his counsel was ineffective on this ground is without merit, and should be dismissed. Fisher, 215 F.3d at 446-447 [Court reviewed petitioner's ineffective assistance of counsel claims under the standards set forth in 28 U.S.C. § 2254(d)].

**Ground Four**. Petitioner's final ineffective assistance claim is that his trial counsel was ineffective for not investigating the "cab driver" murder "with the intent" to put up a meaningful adversarial challenge and alternative interpretation against the State's evidence and theory. However, as already noted, Bloom testified that the defense had full access to all of the physical evidence, documents, and witnesses, and that with regard to the cab driver murder, "[t]he Solicitor gave us every scrap of evidence they had on both the barber shop and cab driver case that they had to my knowledge. If the Solicitor's Office has suppressed some type of Brady material, I'm not aware of it, because they gave us full access." (Volume 7, p. 3348). Bloom also testified that Petitioner had a "fairly skilled and expansive defense team. . . two investigators on the case, one focusing on the guilt phase issues, one focusing on sentencing phase issues. . . . an expert in the field of crime scene

and shoe impressions. . . . a psychologist . . . expert witnesses who testified during the sentencing phase." (Volume 7, p. 3348). Bloom testified that "[w]e had a very skilled and experienced private investigator who worked countless [] of hours on both these cases. We also had a mitigation investigator at sentencing. But on the cab driver murders, not only did we have an investigator, we had a crime scene expert with Mr. Girndt advising us as to both cases." (Volume 7, p. 3368). At the PCR hearing, Petitioner questioned Bloom about the fact that in one of the "letters" he had written he referenced the cab driver struggling, even though there was some evidence there had been no struggle, which would seem to discredit the letter. (Volume 7, pp. 3379-3380). Bloom testified that he did not think that they could prove from the evidence or the crime scene that the cab driver did not resist, and opined that he did not feel like that was the most incriminating part of the cab letter or that they could use it to exonerate Petitioner. (Volume 7, pp. 3380-3383). Nettles also testified that they investigated the cab driver murder, and opined that Petitioner's letter referencing the cab driver murder was the worst piece of evidence, because there were not any other cab murders during this time period. (Volume 7, pp. 3414-3415).

There is no evidence of ineffective assistance in this testimony, and Petitioner failed to present any evidence, records, or witnesses in his PCR proceedings to support his conclusory allegations with respect to this issue. See Kerr v. Kingston, No. 04-1153, 2008 WL 2954278 at * 13 (E.D.Wis. 2008)[Evidence is merely speculative where Petitioner fails to proffer the alleged evidence]; Gonzales v. Quarterman, No. 06-164, 2007 WL 999019 at * 7 (W.D.Tex. Mar. 29, 2007)[Claim is speculative and conclusory where no evidence is proffered to support claim]; Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996)[rejecting claim that counsel was ineffective for failure to present mitigation evidence family members, where there was no proffer of this testimony];

Bassette v. Thompson, 915 F.2d 932, 940-941 (4th Cir. 1990)[Petitioner's allegations that attorney did ineffective investigation does not support relief absent proffer of the supposed witness' favorable testimony]. Further, with regard to Petitioner's allegations that he could have explained some of the items contained in his letter and how they didn't accurately describe the cab driver murder, the Petitioner did not testify at trial, and the undersigned has already addressed and found that counsel's advice to Petitioner not to testify did not constitute ineffective assistance of counsel. See discussion, supra.

Petitioner has also failed to show that, even if his counsel had obtained additional information or discovery concerning the cab driver's murder, the outcome of his trial would have been different. He has therefore failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. This claim should be dismissed.

**II.**

Respondent also addresses the issue raised by Petitioner in Ground Five of his Petition; that the Solicitor committed misconduct by telling the court that no deals were made for witnesses' testimony, and by telling the state's witnesses to say the same thing on the stand. However, Petitioner did not address this claim in his memorandum in opposition to summary judgment, where he clearly set forth the four grounds that he was pursuing. See Motion in Opposition to Summary Judgment, pp.

1-2.

Since Petitioner has not contested this issue, the undersigned finds it to have been abandoned. In any event, it is without merit, as Petitioner has failed to present any evidence to support this claim.

**Conclusion**

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

February 17, 2009

Charleston, SC

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).