**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Felix Cheeseboro, #237564, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | C.A. No.: 0:07-4090-PMD-PJG |
| v. | ) | |
| | ) | |
| Leroy Cartledge, Acting Warden of | ) | **ORDER** |
| McCormick Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

In this matter, *pro se* Petitioner Felix Cheeseboro ("Cheeseboro" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming ineffective assistance of counsel. This Petition was filed on December 17, 2007. On June 2, 2008, Respondent filed a Motion for Summary Judgment. After being advised as to the necessity of responding to a Motion for Summary Judgment and receiving an extension of time for a response, Petitioner filed a Response in opposition on September 2, 2008. The record contains the Report and Recommendation ("R&R") of United States Magistrate Judge Bristow Marchant, made pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(s)(c) and (e), D.S.C. The Magistrate Judge recommends to this Court that Respondent's Motion for Summary Judgment be granted with regard to each of Petitioner's grounds. A party may object, in writing, to an R&R within ten days after being served with a copy of the report. Petitioner filed timely Objections to the R&R on March 20, 2009.

**BACKGROUND**

Petitioner was charged with armed robbery and the shooting of three victims on March 14, 1996 in a barbershop in Columbia, South Carolina. Petitioner walked into the barbershop in the early morning hours, forced the owner, an employee, and a customer into the back room, took their

wallets, and shot all three in the back of the head. Two victims died, but one victim, Kendrick Davis ("Davis"), survived and identified Petitioner as the shooter. Petitioner removed the weapon from the scene, but SLED gathered and analyzed three bullets from the crime scene, and concluded that the same gun had been used to kill a cab driver in a shopping mall parking lot about a month earlier.

The murder weapon, a .38 pistol, was discovered on October 3, 1996 in Lamont Hilliard's ("Hilliard") apartment during a search for stolen items unconnected to Petitioner. (Vol. 7, 3031.) A SLED firearms examiner matched the bullets from the barbershop incident and the cab driver killing to the seized .38 pistol. *Id.* An investigation revealed that Bernard Johnson ("Johnson") originally bought the gun in November 1995. Petitioner possessed the gun from January 1996 through May of 1996 when he returned it to Johnson. Hilliard then received the gun in late May 1996 from Johnson, who asked him to hold onto it. *Id.* at 3031-32. After Davis identified Petitioner as his attacker, Petitioner was retrieved from Greenville County Detention Center, where he was incarcerated on other, unrelated charges. *Id.* at 3033. Law enforcement officials learned that throughout the time period in question, Petitioner had been corresponding with an inmate named Virgil Howard, so they searched Howard's cell, and found two letters written by Petitioner. While both were in some sort of code, law enforcement officials believed that the letters make reference to the murder of the cab driver and a planned robbery for sometime in late March.

Petitioner was indicted in Richland County, South Carolina during the January 1997 term for two charges of murder, three charges of armed robbery, three charges of kidnapping, and one charge of assault and battery with intent to kill. The State also gave Notice of Intent to Seek the Death Penalty. On April 27, 1998, the case was called for trial and Petitioner was represented by Chief Public Defender Jeffrey Bloom, Assistant Public Defender L. Rose Hall, Attorney William

Nettles, and Attorney Tony Axam. On May 14, 1998, Petitioner was found guilty on all nine charges by a Richland County jury. The sentencing phase of Petitioner's trial began on May 15, 1998, after he exercised his right to the twenty-four-hour cooling-off period pursuant to S.C. Code § 16-3-20(B). On May 17, 1998, the jury returned unable to render a unanimous verdict for Petitioner's sentence. Thereafter, the trial judge sentenced Petitioner to twenty years for assault and battery with intent to kill, a consecutive thirty year term for each armed robbery, a consecutive thirty year term for kidnapping the surviving victim, and a term of life imprisonment without parole for each of the two murders.

Attorney Wanda Haile filed a timely Notice of Appeal with the Supreme Court of South Carolina. On January 19, 2001, Petitioner stated the following seventeen direct appeal issues:

1.  The lower court erred in denying appellant's motion to dismiss the state's indictments, or in the alternate, to suppress evidence and testimony pertaining to the alleged murder weapon because the premature destruction of the weapon hindered appellant's defense, which in turn rendered the original trial against him fundamentally unfair.

2.  The lower court erred in allowing into evidence the in-court and out-of-court identifications made by Kendrick Davis and his identification testimony thereof because said evidence was tainted and unreliable due to an unduly suggestive and invalid hypnosis procedure.

3.  The lower court erred in allowing prejudicial Lyle testimony regarding a cab driver murder into evidence at trial.

4.  The lower court erred in denying the defense an opportunity to examine Kendrick Davis about his use of a specific racial slur in order to fully attack his credibility as a witness and the credibility of his identification of appellant as the perpetrator in the case.

5.  The lower court erred in denying the defense an opportunity to impeach Kendrick Davis with his entire prior criminal record.

6.  The lower court erred in denying the defense's motion for a mistrial after Sergeant Mitch Wilkerson commented twice on appellant's post-arrest

3

silence.

7.    The lower court erred in not requiring the state to identify the confidential informant who led police to state's witness Bernard Johnson and to release tapes of Johnson's drug transactions, all of which constituted critical impeachment evidence in the case.

8.    The lower court erred in denying the defense impeachment information connected to Bernard Johnson, particularly in light of the fact that he received an eight year sentence after pleading guilty to all his drug charges subsequent to appellant's trial.

9.    The lower court erred in allowing letters appellant allegedly wrote to inmate Virgil Howard into evidence at trial because the letters were irrelevant and prejudicial.

10.    The lower court erred in not allowing the defense to put forth evidence regarding its response to the S-A-F-E letter written by appellant.

11.    The lower court erred in allowing into evidence testimony establishing that appellant was in possession of a .45 caliber pistol subsequent to the barbershop incident and prior to his Greenville arrest.

12.    The lower court erred in failing to grant appellant's motion for a mistrial after the admission of Lyle testimony into evidence suggesting that appellant stole the .45 caliber pistol in question.

13.    The lower court erred in allowing the Ruckus letter into evidence at trial.

14.    The lower court erred in denying the state an opportunity to submit evidence in direct opposition to the Ruckus letter.

15.    The lower court erred in denying the defense an opportunity to cross-examine Sergeant Wilkerson regarding other suspects who confessed to the Kelly killings.

16.    The lower court erred in denying appellant's requested circumstantial evidence charge.

17.    The lower court erred in denying appellant's request for a Manning reasonable doubt charge.

(Attach. to Mem. in Supp. of Mot. Summ. J., Vol. 6, 2913-14.)  The Supreme Court of South

4

Carolina issued an opinion affirming Petitioner's convictions and sentences on August 27, 2001. *State v. Cheeseboro*, 552 S.E.2d 300, 315 (2001). After a denial of a Petition for Rehearing on September 27, 2001 and a Remittitur on December 21, 2001, Petitioner's counsel also filed a Petition for Writ of Certiorari with the Supreme Court of the United States, which was denied on March 18, 2002.

Petitioner subsequently filed a *pro se* Application for Post-Conviction Relief ("PCR") on July 29, 2002. Petitioner asserted the following issues: (1) lack of subject matter jurisdiction, (2) ineffective assistance of trial counsel, (3) ineffective assistance of appellate court counsel, and (4) violation of procedural due process rights. (Vol. 7, 3277-78.) A post-conviction relief hearing was held before Judge G. Thomas Cooper on July 20, 2005. Charlie Johnson ("Johnson") appeared as counsel for Petitioner. Johnson stated to the court:

> . . . I have been unable to find any issues that I think are relevant issues to bring before the Court. I informed Mr. Cheeseboro of this, and he stated that he had some issues that he would like to bring . . . I feel that they would not be successfully brought forward. So basically we are at an impasse here. He tells me that he wishes to request a continuance and that the Court appoint a new attorney.

(Vol. 8, tab 3., Tr. 4.) The court granted a continuance, but did not give Petitioner a new attorney, instead instructing Petitioner to tell Johnson all of the issues he believed were relevant to his case before the next hearing. *Id.* at Tr. 22. The next post-conviction hearing occurred on October 24, 2005. Petitioner was again represented by Johnson, with the witnesses including Petitioner and two of his trial attorneys, William Nettles and Jeffrey Bloom. Petitioner's claim for PCR was denied and dismissed with prejudice on January 4, 2006. The PCR court found that Petitioner failed to show both elements required in *Strickland v. Washington*, 443 U.S. 668 (1984). Petitioner failed to show (1) any ineffective assistance of counsel and (2) any prejudice arising from the alleged failures of

counsel. Petitioner filed an appeal of the PCR dismissal on March 6, 2006. The appeal was denied on December 5, 2007.

On January 7, 2008, Petitioner filed a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody in this Court. Petitioner's Motion to Amend his Complaint was granted on February 4, 2008. Petitioner raises the following grounds:

1. Trial Counsel were ineffective for not presenting evidence of the August 23, 1996 police search of apartment 4 on House Street, to prove that Petitioner never had possession of the alleged murder weapon in his capital case.

2. Trial Counselor was ineffective for not filing any additional motion to the courts, to examine the alleged murder weapon.

3. Trial Counselor was ineffective for advising Petitioner not to testify during the guilt phase of his trial, and for not presenting the jury with an alternative interpretation of the state[']s evidence that would give the jury reason to doubt the state[']s case.

4. Trial Counselor was ineffective by not investigating the cab driver murder, "with the intent" to put up a meani[ng]ful adversarial challenge and alternative interpretation against the state[']s evidence the theory.

5. Solicitor committed prosecutors misconduct by not only telling the court that their witness never received any promises of a deal, but also telling their witnesses to say the same thing on stand [sic].

Respondent filed a Motion for Summary Judgment on June 2, 2008. Respondent also filed a Return and Memorandum of Law in Support of Motion for Summary Judgment on June 2. Petitioner filed a Motion in Opposition to Respondent's Motion for Summary Judgment on September 2, 2008.

On February 17, 2009, the Magistrate Judge issued an R&R recommending that Respondent's Motion for Summary Judgment be granted, and that the Petition be dismissed. The Magistrate Judge noted that "since Petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the South Carolina state court, this Court's review is limited by the

deferential standard of review set forth in § 2254(d)(1)," as interpreted by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000). (R&R at 18.)

With respect to ground one, the Magistrate Judge found that the PCR judge did not discuss this issue, that Petitioner failed to file any motions seeking a ruling on this issue and, therefore, Petitioner should be barred from consideration of it by this Court. (R&R at 13.) Ground two was found to be without merit because the Magistrate Judge agreed with the Supreme Court of South Carolina that Petitioner failed to demonstrate both that the gun had any exculpatory value before it was destroyed, and that his trial would have been different if counsel had made any additional motions to examine the gun. (R&R at 19.) With respect to ground three, the Magistrate Judge found it to be without merit because Petitioner failed to show how counsel was ineffective for giving him this advice, and further noted that, again, Petitioner failed to show that the state court's rejection of this claim was unreasonable. (R&R at 20, 22.) With respect to ground four, the Magistrate Judge also found this ineffective assistance of counsel claim to be without merit because the defense received all of the evidence on the cab driver case and Petitioner had multiple experts and investigators working on this issue. Furthermore, the Magistrate Judge determined that Petitioner "failed to show that, even if his counsel had obtained additional information or discovery concerning the cab driver's murder, the outcome of his trial would have been different." (R&R at 24.) Finally, with respect to ground five, the Magistrate Judge found that because Petitioner failed to address it in his memorandum in opposition to summary judgment, it has been abandoned and, in any event, Petitioner failed to present evidence to support the claim.

Petitioner filed a timely Objection to the R&R on March 18, 2009.

7

## STANDARD OF REVIEW

### A.    Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 269 (1976). The Court reviews *de novo* those portions of the R&R to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(C). As to those portions of the Report for which no such specific written objections are made, the Court "need not conduct a *de novo* review, but must instead only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). After a review of the entire record, the R&R, Petitioner's Petition and his Objections, the Court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the R&R and fully incorporates it into this Order.

### B.    Legal Standard for Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate."

8

*Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## DISCUSSION

Petitioner is seeking habeas relief under 28 U.S.C. § 2254 on the grounds that his federal constitutional rights were violated by the state court proceedings. However, because of the significant federalism concerns implicated, this Court will only grant habeas relief sparingly for matters arising out of state courts.

With respect to those claims that were adjudicated by the state court on their merits, habeas relief is warranted only if a petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id*. at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id*. at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id*. at 407-08.

"The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court may not issue the writ under the "unreasonable application" clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

The Court will treat Petitioner's Objections to the Magistrate Judge's R&R individually.

## I.     Petitioner's Objection to the Magistrate's Recommendation that His First Count Should be Dismissed as Procedurally Defaulted

Petitioner's first Objection is to the Magistrate Judge's recommendation that his first claim for relief in his Petition should not be considered by this Court because he did not properly exhaust

the claim in state court proceedings.

Petitioner claims that his trial counsel was ineffective in failing to thoroughly investigate and present to the jury evidence regarding how the weapon was discovered. The gun in question was discovered by police during a search of the residence of Lamont Hilliard on October 2, 1996. The search was not connected with the criminal charges against Petitioner, but when police discovered the gun underneath a mattress and took it into evidence and ran forensics tests on it, they discovered it matched up as the gun used to commit the crimes with which Petitioner had already been indicted. The PCR judge determined that Petitioner had no standing to challenge this search on Fourth Amendment grounds, since it was not his residence and he had no reasonable expectation of privacy as to the place of residence of a third-party. However, Petitioner argues that the PCR judge misconstrued his argument, and that he actually wanted to make a different argument.

Petitioner now seeks to assert that his trial counsel was ineffective in investigating the details of a separate search of Hilliard's residence, which took place on August 23, 1996. According to Petitioner, police conducted a search of Hilliard's residence on that date, and found no gun. Since Petitioner had already been incarcerated at this time, he asserts that this proves that the gun actually belonged to someone else, and that had this information been presented to the jury, it would have been sufficient to establish reasonable doubt.

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas corpus. Claims not so raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977). The theory of exhaustion is based upon 28 U.S.C. § 2254, which gives

11

the federal court jurisdiction of habeas petitions.  *See generally O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them.  The burden of proving that a claim has been exhausted lies with the petitioner.  The exhaustion requirement, though not jurisdictional, is strictly enforced.

Additionally, a claim has not been exhausted unless the substance of a petitioner's claim is "fairly presented" to the state courts.  The Fourth Circuit has held that "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not suffice.  In other words, fair presentation contemplates that both operative facts and the controlling legal principles must be presented to the state court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).

In order to exhaust his collateral claims in state court, a South Carolina habeas corpus petitioner must pursue a direct appeal and file an application for relief under the South Carolina Post Conviction Procedure Act, S.C.Code Ann. §§ 17-27-10-160.  As the Supreme Court of South Carolina has explained, "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."  *In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

The Supreme Court of South Carolina has recently reiterated the general rule that a PCR judge must make specific findings of fact and conclusions of law for an issue to be preserved for appellate review, and a Rule 59(e) motion must be filed if issues are not adequately addressed in order to preserve those issues for appellate review. *Marlar v. State*, 375 S.C. 407, 410, 653 S.E.2d 266, 267 (2007) (citing *Pruitt v. State*, 310 S.C. 254, 423 S.E.2d 127, 128 n.2 (1992)).

Respondent concedes that Petitioner made this claim in his application for PCR relief. However, this specific claim was not presented at the PCR hearing, where Petitioner was represented by counsel, and this claim was not addressed by the PCR judge in his decision to deny PCR. After this decision was made, Petitioner filed no direct appeal of the decision on these grounds, and filed no SCRCP Rule 59(e) motion for the PCR judge to issue specific findings of fact and conclusions of law on the claim.

In the R&R, the Magistrate Judge recommended that Respondent's Motion for Summary Judgment be granted on this count, because this issue was not properly exhausted in state court. While Petitioner concedes that this issue was neither presented to nor addressed by the PCR court, and he also concedes he did not file a Rule 59(e) motion seeking specific findings of fact and conclusions of law on the issue, he nonetheless objects to the Magistrate Judge's recommendation on this count. Petitioner objects because he claims that the failure to present the issue in PCR court, and the failure to file a Rule 59(e) motion on the claim after the PCR judge had made his decision was the fault of his PCR attorney, and therefore constituted ineffective assistance of counsel.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In his Objections, Petitioner implicitly argues that sufficient "cause" and "prejudice" exist, and therefore that the Court should disregard the procedural default.

When attorney error amounts to constitutionally ineffective assistance of counsel, it may provide the cause necessary to excuse a procedural default. *Mackall v. Angelone*, 131 F.3d 442, 446 (4th Cir. 1997). In order to constitute constitutionally ineffective assistance of counsel, however, a constitutional right to effective assistance of counsel must first exist. *Id.* In this case, Petitioner had no constitutional right to effective assistance of counsel in his state post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also Murray v. Giarratano*, 492 U.S. 1, 13 (1989) (O'Connor, J., concurring) ("[T]here is nothing in the Constitution or the precedents of the Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings, . . . nor does . . . the Constitution require [] the States to follow any particular federal model in those proceedings."). Accordingly, the alleged deficient performance of PCR counsel cannot establish "cause" to excuse Petitioner's defaulted claims, and his objection fails as a matter of law. *Mackall*, 131 F.3d at 449 (finding that because a petitioner had no right to effective assistance of counsel in his state habeas proceedings, he could not demonstrate cause to excuse the procedural default of his claims).

Furthermore, while the lack of cause is dispositive of the issue, the Court also notes that Petitioner has not shown that the failure to investigate and show this evidence resulted in any sort

14

of miscarriage of justice.  If Petitioner's allegations are true, this would merely establish that police

did not find the gun at the same residence during an earlier search.  There is no evidence as to how

thorough the earlier search was, so it is entirely possible police did not search under the mattress

where they would find the gun months later.  Furthermore, even if they did search the mattress and

the gun in question was not there at that time, this would only establish that someone else was in

control of the gun at the time.  This is in no way inconsistent with the prosecution's theory of the

case, which was that after using the gun to commit the acts of murder, assault and battery, armed

robbery, and kidnapping for which he was tried and ultimately convicted, he gave the gun back to

Johnson, who in turn gave it back to Hilliard.  The fact that Hilliard may have been in control of the

gun months after Petitioner used it to commit his crimes does not overcome the strong forensic

evidence that he used the gun in committing the crimes and the eyewitness testimony that Petitioner

was the murderer.  Therefore, even if this information had been brought up at trial, it would have

been largely irrelevant, and could not have convinced a reasonable juror that there was a reasonable

doubt as to whether or not Petitioner was guilty of the crimes with which he was tried.

 Accordingly, since Petitioner has failed to show both cause and prejudice for his procedural

default of this issue, this claim is procedurally barred from being considered by this Court under §

2254, and must be dismissed.[1]

_____

 [1] While Petitioner does not explicitly do so, and the nature of his Objections make it
difficult to discern the precise nature of his complaint, he also appears to raise for the first time
in his Objections a possible claim that the PCR judge did not give him a fair hearing.  This claim
is devoid of merit.  At the initial PCR hearing, Petitioner's PCR counsel informed the PCR judge
that he had reviewed Petitioner's case and did not believe Petitioner had any valid grounds for
PCR relief.  When asked, Petitioner informed the judge he was not satisfied with this, and
wanted to seek PCR on numerous grounds.  Accordingly, the PCR judge informed Petitioner's
PCR attorney to meet with Petitioner, ascertain the grounds upon which Petitioner wished to
seek PCR, and to bring them to the PCR court's attention at the hearing, which was postponed in

II.     **Petitioner's Objection to the Magistrate Judge's Recommendation that His Second Count Should be Dismissed Because He Failed to Demonstrate that the State Court's Decision on the Claim Was an Unreasonable Application of Federal Law**

Petitioner's second claim is that his trial counsel was ineffective in failing to file additional motions to the trial court to be able to examine the murder weapon. In his Objections, Petitioner claims that his trial counsel should have demanded to have access to the murder weapon itself, so they could have performed tests which Petitioner presumably believes, although he never explicitly states so, would have uncovered exculpatory information. Petitioner's trial counsel never got the chance to perform their own examination of the weapon because before the relevant forensics tests had returned which showed that the weapon had been used in the barbershop killings, the police evidence department, believing the weapon to be nothing more than an illegal unregistered handgun, melted down the weapon in accordance with department policy. At trial, the government did not have the gun itself, but had the forensics tests, photographs of the weapon, and testimony from several witnesses that the gun was the one used by Petitioner in carrying out the crimes. There was

---

order that Petitioner could meet with his PCR counsel. Petitioner did so several times, and PCR counsel presented Petitioner's claims for relief before the PCR judge, who listened to them and considered them at the hearing. The PCR judge ultimately decided that Petitioner's claims were meritless. Petitioner's general objection to the conduct of the PCR judge seems to be simply that the PCR judge did not grant him relief, but simply did an deem them sufficient to grant him PCR. As detailed above in this section, Petitioner's argument regarding the August 23 search is meritless because that information is ultimately irrelevant and falls far short of establishing reasonable doubt as to his guilt. Accordingly, if Petitioner's complaints regarding the PCR judge are an attempt to seek habeas relief because Petitioner was not given a fair PCR hearing, these assertions are completely devoid of merit, and fail as a matter of law.

16

no allegation or evidence that this happened as a result of anything other than a good faith miscommunication.

Petitioner's trial counsel had filed all routine discovery and *Brady* motions, which would have provided access to the gun had it not been destroyed. He testified that in 15 years of criminal practice he had never before had a situation like this arise, so it had not occurred him that it might be necessary to demand immediate access to or custody of the weapon. Furthermore, there was absolutely no evidence in the record that possession of or access to the handgun would have yielded any exculpatory evidence.

On the contrary, the vast weight of both forensic and eyewitness testimony seems to conclusively establish that the destroyed weapon was the gun used by Petitioner in the killings. In fact, two members of Petitioner's trial counsel team both testified that the destruction of the weapon was a positive development for Petitioner's case, because it allowed them to call the integrity and competence of the police department's investigation into question, and Petitioner's attorneys made extensive arguments along these lines to the jury. While it was obviously not effective enough to get a not guilty verdict for Petitioner, several of his attorneys speculate that it may have planted enough of a kernel of doubt among at least a couple of jurors that they refused to return with a unanimous death penalty verdict at the penalty phase of their deliberations.

In addressing issues concerning the ineffectiveness of counsel, the Supreme Court of the United States has set forth a two-pronged test which was announced in *Strickland v. Washington*, 466 U.S. 668, 687-98 (1984). The first prong of the *Strickland* test, the performance prong, relates to professional competence. In order to satisfy this prong, the petitioner must show that his attorney's representation was deficient and that it fell below "an objective standard of reasonableness." *Id*. at 687-91. "Judicial scrutiny of counsel's performance must be highly

17

deferential," and "every effort must be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. The Supreme Court and the Fourth Circuit have emphasized that in making this determination, there is a presumption that trial counsel's conduct was within the wide range of reasonable professional assistance credited to attorneys representing criminal defendants. *Id*. at 689; *see Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985).

In order to show that the second prong, the prejudice prong, of the *Strickland* test has been violated, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If the petitioner does not meet his burden of proving prejudice, then "a reviewing court need not consider the performance prong." *Id*.

The Court also notes that Petitioner did have this claim adjudicated on its merits by South Carolina courts. Where matters of federal law are interpreted and applied by state courts, a federal court may not grant habeas relief pursuant to § 2254 simply because the court disagrees with the state court's application; instead, a federal court may only grant habeas relief under § 2254 on an issue already adjudicated by a state court if the state court's decision was a manifestly unreasonable interpretation or application of federal law. *Williams*, 529 U.S. at 411.

Here, Petitioner's claim was adjudicated by the Supreme Court of South Carolina, which explicitly held that his claim failed because he failed to show any prejudice from the destruction of the weapon. The court held:

> [A]ppellant has not demonstrated in the alternative that the gun had
> exculpatory value that was apparent before it was destroyed. Appellant's expert

18

testified the actual gun rather than the photographs of it should have been presented to the witnesses for identification. None of the witnesses, however, including appellant at the time he gave his statement, expressed any doubt that the gun in the photographs was the gun given to appellant. Further, Agent Paavel definitively identified the murder weapon as the gun in the photographs. There is no evidence of any apparent exculpatory value especially given the fact that the gun was recovered months after the crime and fingerprints were not an issue.

Finally, all of Agent Paavel's reports and the document of his microscopic comparison of the bullets from the murder scene with the test bullets fired from the gun, in addition to the bullets themselves, were available to the defense. Accordingly, comparable evidence was available from a source other than the gun.

*State v. Cheeseboro*, 346 S.C. 526, 539, 552 S.E.2d 300, 307 (2001).

Under *Strickland,* in order to establish a claim for ineffective assistance of counsel, Plaintiff must establish that his trial counsel's failure to move for immediate access to or custody of the weapon fell below "an objective standard of reasonableness," and that "there is a reasonable probability," but for counsel's failure to file such a motion, "that the result of the proceeding would have been different." Furthermore, since the Supreme Court of South Carolina addressed the prejudice issue and explicitly held that Petitioner was not prejudiced by not being able to access the weapon in preparing and presenting his defense at trial, this Court can only find that Petitioner has stated a valid claim for habeas relief under § 2254 if the state court's application of federal law was unreasonable.

We hold that the state court's interpretation and application of federal law was not unreasonable, and that Petitioner was not prejudiced by the inadvertent destruction of the weapon. The Supreme Court has held that in the absence of bad faith or a showing of prejudice, inadvertent destruction of evidence does not violate a defendant's constitutional rights. *Arizona v. Youngblood*, 488 U.S. 51 (1988). As the state court stated in its resolution of the issue, there is no indication that having access to the weapon would have been of any help to Petitioner. Furthermore, Petitioner and

his attorneys did have access to all of the various pieces of forensic evidence regarding the weapon, which they were free to perform independent testing on and possibly present to the jury to show that it was not Petitioner's gun, or that the gun was not used in the killings. The forensic testimony was also only one part of the state's case against Petitioner, which also included eyewitness testimony that he was the killer, and incriminating letters written by Petitioner referencing the barbershop and cab driver killings. Given that Petitioner's claim is based upon not having access to just one piece of evidence, of which there is no indication as to its exculpatory value, the state court was not unreasonable in determining that Petitioner was not prejudiced by the accidental destruction of the weapon.

Therefore, since Petitioner was not prejudiced by the destruction of the weapon, he also could not logically have been prejudiced by his counsel's failure to move for immediate access to that weapon. Accordingly, Petitioner's claim that his counsel was ineffective for failing to file such a motion fails as a matter of law.

III. **Petitioner's Objection to the Magistrate Judge's Recommendation that His Third Count Should Be Dismissed Because He Failed to Demonstrate that the State Court's Decision on the Claim Was an Unreasonable Application of Federal Law**

Petitioner's next claim is that his trial attorneys were ineffective because they advised him not to take the stand and testify in his own defense, and they failed to establish a viable alternative to the state's theory of the case. Petitioner brought up this claim in his PCR application and hearing, but the PCR judge found that Petitioner's claims of ineffective assistance of trial counsel were meritless. The Magistrate Judge recommended that this Court dismiss this count on the grounds that Petitioner failed to demonstrate that the PCR's decision represented an unreasonable application of

20

federal law.  Petitioner objected to this recommendation, and wrote extensively as to why he believes his trial attorneys were ineffective.

Essentially, there are two main elements to this count of Petitioner's claim for habeas relief. First, Petitioner asserts that his attorneys should have put him on the stand.  He does not claim that he was in any way prohibited from taking the stand, but claims that his trial counsel strongly advised him not to do so because they believed his testimony would not go over well with the jury, especially in light of their view that if Petitioner testified, the prosecution would be able to question him about his extensive criminal history, which they believed would make the jury less sympathetic towards Petitioner.  Second, Petitioner claims that his trial counsel were ineffective in failing to put forth an alternative explanation for the "safe letter," which refers to a letter written by Petitioner to an associate prior to the killings.  The letter is clearly written in some sort of code, but makes reference to breaking into a safe sometime in March.  The state put forth the theory that the letter referred to the safe in the barbershop, and that Petitioner's intent was to rob and kill the people in the barbershop and then break into the safe.  However, Petitioner claims that he was actually referring to a plan to break into the safes of a local children's home and a travel agency, at least one of which he had previously burglarized.  According to Petitioner, his counsel should have used this theory of the letter to show that he was only interested in robbing safes for money, not causing violence.

Petitioner does acknowledge that his counsel believed they could get this interpretation of the letter across to the jury, but were unable to do so within the bounds of the evidentiary rules. Petitioner's trial attorneys came to the conclusion that the only way they would be able to introduce this interpretation of the letter to the jury would be through Petitioner directly testifying about what

the letter meant, but his attorneys still believed that Petitioner would do more harm than good to his case if he testified, so they opted not to introduce Petitioner's explanation of the letter and advise him not to testify on the stand. Petitioner acknowledges all of this in his Objections, but asserts that his explanation of the letter would have changed the outcome of the case, and further asserts that he would have been an effective and sympathetic witness and that his attorneys should have advised him to testify on his own behalf.

In order for Petitioner to succeed on this claim, he must satisfy both of the *Strickland* prongs for ineffective assistance of counsel. He must show that his trial attorneys' decision not to put forth Petitioner's explanation for the letter and their decision to advise him not to testify on his behalf fell below an objective standard of reasonable legal decisionmaking, and that, absent those decisions, there is a reasonable probability the outcome would have been different. Furthermore, since Petitioner raised this claim before the PCR court, which ruled that Petitioner failed to establish a claim for ineffective assistance of counsel, this Court can only grant Petitioner's claim for habeas relief on this ground if the PCR court's decision constituted an unreasonable application of federal law.

Petitioner has fallen far short of meeting that standard. While Petitioner makes extensive allegations about what his trial attorneys did wrong and how the trial would have gone better had they done things differently, these claims are nothing more than speculative hindsight, unsupported by any objective legal or factual basis. Courts have firmly established the legal principle that reasonable strategic decisions may not form the basis of an ineffective assistance of counsel claim. *See, e.g.*, *United States v. Roane*, 378 F.3d 382, 404-05 (4th Cir. 2004) ("Under the first prong of *Strickland*, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the

22

wide range of reasonable professional assistance.' ").  Here, Petitioner is, at most, asserting that his trial attorneys made strategic decisions that were unsuccessful.[2]  Even if the Court accepts Petitioner's assertions that the trial would have gone better had his attorneys put him on the stand and let him give his explanation of the letter to the jury, this does not mean that they were ineffective.  The Constitution does not guarantee defendants perfect representation or even great representation, only representation that is sufficient to effectively represent their interests.  Here, Petitioner was represented by multiple attorneys who worked diligently in preparing and presenting his case before a jury, and they may very well have saved his life in the process.

The fact is that trying a case is similar to the game of chess in at least one important respect–while planning and preparation of your case is crucial, the trial is never going to go exactly according to plan, and things are going to go wrong and require adaptation and flexibility.  Here, Petitioner's attorneys believed that they would be able to present an alternate explanation for the "safe letter" to the jury, but their attempts to do so were held to be inadmissible by the trial judge.  At this juncture, Petitioner's attorneys were forced to make a choice between whether they should advise Petitioner to take the stand so he could try to explain the letter to the jury, or whether they should advise him not to take the stand so he would not have to answer questions on cross-examination about his criminal past.  The attorneys ultimately decided that allowing Petitioner to

---

[2] However, even this is not clear to this Court.  Petitioner's attorneys, veteran criminal defense attorneys, felt strongly that Petitioner would not make a sympathetic witness, particularly if the state was able to bring up his extensive criminal history on cross-examination. Given that this was a capital case, they felt that exposing him to the jury would result in a greater likelihood of him receiving a death sentence, a penalty he avoided in this case.  As to the alternative explanation of the "safe letter," while the state's interpretation of the letter certainly does Petitioner no favors, the alternate explanation, that Petitioner was planning to break into and rob a local children's home, would hardly engender any sympathy from the average juror, either.

testify would be too harmful, and that they would advise him not to testify. Whether this was the correct decision or not this Court is in no position to say, but applying the relevant law to this case allows the Court to say with certainty that their actions did not constitute ineffective assistance.

Therefore, the Magistrate Judge properly recommended that Petitioner had failed to show that the PCR court's decision that he had not established a claim for ineffective assistance of counsel was an unreasonable application of federal law. Accordingly, Petitioner's third count fails as a matter of law and is dismissed.

**IV.    Petitioner's Objection to the Magistrate Judge's Recommendation that His Fourth Count Should Be Dismissed Because He Failed to Demonstrate that the State Court's Decision on the Claim Was an Unreasonable Application of Federal Law**

Petitioner's next claim is that his trial counsel was ineffective in failing to thoroughly investigate the circumstances of the cab driver's murder and to emphasize the letter Petitioner wrote to Virgil Howard to the jury in order to highlight the inconsistencies between the contents of the letter and the state's theory of the cab driver's murder. In the letter Petitioner wrote to Howard, he stated:

> Yo, Peace G, I got everything, even two letters from you. Things have been slow, but send them flicks because next time you write, my check will be cashed by then. I'm working with a janitorial service, so I can pay the payroll officers. Bust it. You know this shit ain't me. I got to have backup when my licks don't go over. Read my last letter, you'll see where I told you about the Cee-Allah-Born. That didn't come out right because he tried to stag, so I sent him to the essence. You've heard about it. It was the one down by the mall last month. . . . Now that I got my God-U-Now back, I'm about to get busy tonight, March 1st . . . I [sic] $300 for the demo tape, so someone's got to go.

346 S.C. at 536, 552 S.E.2d at 305-06. Petitioner does not claim that he did not write this letter. The state hypothesizes, and Petitioner has implicitly confirmed in his discussion of the letter, that "licks" means "robberies," "Cee-Allah-Born" means "cab," "stag" means "struggle," and "God-U-

24

Now" means "gun."  Petitioner was an aspiring rapper who took on the stage name "King Justice" and the letter apparently referenced both the tragic botched robbery of the cab driver and a future planned robbery to get the $300 Petitioner would use for a demo tape.

Petitioner now argues that his counsel was ineffective for failing to emphasize the letter and use it as the basis for pointing out inconsistencies in the state's case.  Petitioner asserts that the state's theory of the cab driver shooting was that it was a robbery, and that the cab driver was shot execution style in the back of the head.  However, the police reported that they found the driver's cash box underneath the passenger side seat at the scene of the crime, which, according to Petitioner, shows that this was not actually a robbery.  Petitioner also claims that since the police's theory of the killing was that the cab driver was shot without struggling, but that he wrote in his letter that the cab driver did struggle, it shows inconsistencies between his letter and the police's version of the murder.

At the hearing before the PCR court, one of Petitioner's attorney's testified as to Petitioner's claim.  He stated that the prosecution was fully cooperative, and turned over all evidence with regard to both the barbershop and cab driver murders.  Since this was a capital case, the defense was furnished with substantial resources to investigate, prepare, and present Petitioner's defense, including two investigators and an expert on crime scenes.  Despite this, not a single member of Petitioner's defense team believed there was any substantial information that they could introduce with regard to the murder of the cab driver which would be helpful to Petitioner.  Police records showed that this was the only instance of a cab driver being killed in the area in the time preceding Petitioner writing the letter, so it was clear that this was the crime to which the letter was referring.

One of Petitioner's trial attorneys stated that as a matter of strategy he thought that far from being helpful to Petitioner's defense, it would have been catastrophic to emphasize as evidence a letter from Petitioner in which he fairly explicitly admitted to killing the cab driver, and stated that he was planning to either rob or kill someone in the near future so he could get $300 to make a rap demo tape. The PCR court agreed, and held that Petitioner's trial counsel was not ineffective for failing to emphasize the letter as evidence and try to argue about its inconsistencies with the police description of the cab driver's murder.

Once again, in order for Petitioner to succeed on this claim, he must satisfy both of the *Strickland* prongs for ineffective assistance of counsel. He must show that his trial attorneys' decision not to emphasize the letter from him to Virgil Howard and to try to use it to point out inconsistencies between the statements in the letter and the official police report on the murder fell below an objective standard of reasonable legal decisionmaking, and that, absent that decision, there is a reasonable probability the outcome would have been different. Furthermore, since Petitioner raised this claim before the PCR court, which ruled that Petitioner failed to establish a claim for ineffective assistance of counsel, this Court can only grant Petitioner's claim for habeas relief on this ground if the PCR court's decision constituted an unreasonable application of federal law.

Petitioner has fallen far short of meeting the required legal standard. It is, to be blunt, shocking for Petitioner to seriously suggest that his case would have been helped by the emphasis on a letter in which he essentially brags about the senseless murder of another human being, and states in a matter-of-fact way that he is planning to either kill or use a gun to rob another person in the near future over a mere $300 so that he can have money to record a rap demo tape. The letter is chilling, and any emphasis on it at all would have only hurt Petitioner's case with the jurors.

26

Arguing over any minor inconsistencies over issues such as whether the robber took the small amount of cash the cab driver had on him or whether or not the cab driver struggled before being killed in cold blood would only have served to highlight the senselessness and brutality of the crime. Accordingly, the PCR judge's determination that Petitioner's trial attorneys were not ineffective in deciding to downplay the letter from Petitioner to Virgil Howard and not to try to argue about the technical details regarding the murder of the cab driver was not an unreasonable application of federal law, and Petitioner's claim for habeas relief on this ground therefore fails as a matter of law.

Also, while he did not raise it in his earlier pleadings, Petitioner complains in his Objections that it was error for the trial court to introduce lyrics to a rap song written by Petitioner while in jail awaiting trial for the killings. The song, called "Ruckus" contained a number of extremely violent lyrics, including the following passage:

> No fingerprints or evidence at your residence
> Fools leave clues, all I leave is a blood pool
> Ten murder cases, why the sad faces?
> Cause when I skipped town, I left a trail [of] bodies on the ground.

346 S.C. at 549, 552 S.E. 2d at 312.

The paper upon which the lyrics were written were taken from Petitioner's cell by guards at the facility, and given to the prosecution. When the prosecution sought to introduce the lyrics as character evidence, the trial court admitted it over the objections of Petitioner's attorneys. Petitioner raised this issue on direct appeal, which ended before the Supreme Court of South Carolina. Taking note of the fact that violent lyrics are quite common in rap music and not necessarily indicative of a personal propensity for violence, the court held that the evidence was more prejudicial than probative and should not have been admitted. However, the court determined that in light of the overwhelming evidence against Petitioner, and the two letters Petitioner had written to Virgil

27

Howard which did clearly show a propensity for violence, that admission of the song lyrics was harmless error, and not a sufficient basis for a retrial under the South Carolina Rules of Evidence.

While it is unclear if he is even asserting such a ground for habeas relief, to the extent Petitioner is putting forth the failure to reverse the conviction based upon the trial court's erroneous admission of the song lyrics as a basis for relief under § 2254, this claim fails as a matter of law. This Court is only empowered to grant habeas relief under § 2254 for instances where state court proceedings violate a defendant's federal rights. Here, the basis for the Supreme Court of South Carolina's decision on this claim was state evidentiary law–no federal law was cited, and no federal law was implicated in the decision. State supreme courts are the final arbiters of matters of state law so long as they do not run afoul of federal constitutional protections, which this matter did not. Accordingly, this Court has no power to review the decision of the Supreme Court of South Carolina holding the trial court's decision to admit the song lyrics into evidence was not reversible error, and any claim Petitioner may be attempting to raise for habeas review on this ground fails as a matter of law.

## V.      Petitioner's Claim for Prosecutorial Misconduct

Finally, the Court turns to Petitioner's claim for prosecutorial misconduct. In his Petition, Petitioner asserted that the solicitor committed prosecutorial misconduct which violated his constitutional rights by telling witnesses for the state to say that they had not made any deals in exchange for their testimony. Petitioner presented no evidence in support of this contention.

However, in Petitioner's Response to Respondent's Motion for Summary Judgment, Petitioner clearly set out only the four claims for habeas relief for ineffective assistance of counsel explained above, and made no mention of a claim for prosecutorial misconduct. Therefore, in his

28

R&R, the Magistrate Judge recommended that this Court dismiss that count of Petitioner's Petition as abandoned. In his 51-page Objections, Petitioner did not object to this recommendation, and made no effort to revive his claim for prosecutorial misconduct .

Accordingly, since Petitioner has ceased to assert that he is entitled to habeas relief on these grounds and has produced no detailed allegations or evidence of any kind regarding these claims, the Court adopts the recommendation of the Magistrate Judge, and dismisses Petitioner's claim for habeas relief under § 2254 on this ground.

<u>CONCLUSION</u>

It is therefore **ORDERED**, for the foregoing reasons, that Respondent's Motion for Summary Judgment is **GRANTED**, and Petitioner Felix Cheeseboro's Petition for relief under 28 U.S.C. § 2254 is **DISMISSED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 30, 2009**

29